# Verified Complaint

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (Boston Division)

Javaid Aziz, individually and as attorney-in-fact for Jamila K. Butt,
Plaintiffs,

Javaid Aziz, Pro se
131 Reed Street,
Cambridge, MA 02140
Phone: (617) 642-9058
Emai: javaid.aziz@gmail.com

v.

Neelofar K. Butt; Neil H. Reig, Esq.; Karen Bosshart, Esq.; Christopher L. Mangold, Esq.; Brightview Senior Living, LLC; Steven C. Bromberg, CPA; Craig S. Donais, Esq.; Thomas J. Rizzo, Esq.; Dr. Jennifer Rosen; Hannah Lea Emmett; Hon. Wayne A. Humphrey; Hon. Linda S. Jamieson; Hon. William J. Giacomo;
Defendants.

Civil Action No. _____

**Address List of Defendants:**

**1. Neelofar K. Butt**
319 Martling Avenue,
Tarrytown, NY 10591
Phone: (845) 424-4444 (Work)
Email: care of neil.reig@elderlawadvisor.net

**2. Neil H. Reig, Esq.**
118 North Bedford Rd., Ste 100
Mount Kisco, NY 10549-2555
Phone: (914) 242-4800
Email: neil.reig@elderlawadvisor.net

**3. Karen A. Morschhauser Bosshart, Esq.**
344 E Main St., Ste 101
Mount Kisco, NY 10549-3086
Phone: (914) 244-3100
Email: care of neil.reig@elderlawadvisor.net

**4. Christopher L. Mangold, Esq.**
200 East Post Road, 2nd Floor

1

White Plains, NY 10549
Phone: (914) 288-8052
Fax: (914) 323-0369
Email: cmangold@cmdivlaw.com

**5. Brightview Senior Living, LLC**
**Attention:** Paul Ataide
Brightview Tarrytown – Senior Living and Memory Care
581 Old White Plains Rd,
Tarrytown, NY 10591
Phone: (914) 368-6228
Email: PATAIDE@bvsl.net

**6. Steven C. Bromberg, CPA**
118 North Bedford Rd., Ste 100
Mount Kisco, NY 10549-2555
Phone: (914) 864-3320
Email: daytodaycpa@verizon.net

**7. Craig S. Donais, Esq.**
95 Market Street
Manchester, NH 03101
Phone: (603) 669-4140
Email: cdonais@wadleighlaw.com

**8. Thomas J. Rizzo, Esq.**
35 Braintree Hill Park, Suite 401
Braintree, MA 02184
Phone: (781) 848-5028
Fax: (781) 848-5096
Email: trizzo@schlossbergllc.com

**9. Dr. Jennifer Rosen**
170 Maple Ave., Unit 309
White Plains, NY 10601
Phone: (914) 220-0283
Fax: (914) 220-0288
Email: care of neil.reig@elderlawadvisor.net

**10. Hannah Lea Emmett**
10 Spur Road
Putnam Valley, NY 10579
Phone:
Email: care of neil.reig@elderlawadvisor.net

2

**11. Hon. Wayne A. Humphrey**
Westchester County Family Court
131 Warburton Ave., 3rd Floor
Yonkers, NY 10701
Phone: (914) 831-6555
Fax: (914) 831-6409
Email:

**12. Hon. Linda S. Jamieson**
Supreme Court, Westchester County
111 Martin Luther King Jr. Blvd., 9th Floor
White Plains, NY 10601
Phone: (914) 824-5300
Fax: (914) 824-5873
Email:

**13. Hon. William J. Giacomo**
Supreme Court, Westchester County
111 Martin Luther King Jr. Blvd., 9th Floor
White Plains, NY 10601
Phone: (914) 824-5300
Fax: (914) 824-5873
Email:

**14. John Doe & Jane Doe**
(To be added)

# Verified Complaint

**Plaintiffs Javaid Aziz and Jamila K. Butt**, by and through Javaid Aziz acting *pro se* and as attorney-in-fact/next friend for his elder sister Jamila, hereby file this Verified Complaint against the above-named Defendants. This action seeks to remedy a deliberate scheme to exploit an elderly woman (Jamila) and to deprive her and her brother (Javaid) of their rights through fraud, coercion, and abuse of legal process. Plaintiffs allege that Defendants, acting in concert, violated federal civil rights and RICO statutes, and committed multiple state-law torts (elder abuse, fraud, intentional infliction of emotional distress, abuse of process, and malicious prosecution) in the course of isolating Jamila and retaliating against Javaid.

## Parties

1. **Javaid Aziz (Plaintiff):** An 81-year-old resident of Cambridge, Massachusetts. He is Jamila's brother and has been a devoted sibling caregiver. Javaid was in daily communication with Jamila until late 2020, when Defendants' actions cut him off. He brings this suit on his own behalf and on behalf of Jamila (via power of attorney and as next friend) to protect her rights and well-being.

3

2. **Jamila K. Butt (Plaintiff):** 87 years old, mother of Defendant Neelofar K. Butt and sister of Javaid. Until late 2020, Jamila was an active, competent individual who clearly communicated her wishes regarding her care and property. She explicitly told family members: *"Do not sell my house. I want to live there with help, or leave it for my children in my will."*. Despite her intent, Jamila has since been declared (wrongfully) incapacitated and kept isolated in a nursing facility. Javaid acts as her attorney-in-fact pursuant to a power of attorney Jamila executed in *his* favor in early 2020, and as her next friend, because she currently cannot access independent counsel due to Defendants' coercion.

3. **Neelofar K. Butt (Defendant):** Jamila's daughter (and Javaid's niece), residing in New York. Neelofar is the primary orchestrator of the scheme. Beginning in 2017, she sought to take control of Jamila's finances and care, against Jamila's expressed wishes. Neelofar procured a **fraudulent 18-page Power of Attorney (POA)** purportedly signed by Jamila naming Neelofar as agent. Using this dubious POA, Neelofar seized control of Jamila's assets and decision-making, isolated Jamila from other family (especially Javaid), and undertook legal actions to cement her control (including obtaining a false restraining order against Javaid). An affidavit was submitted in Court by Neelofar on May 21, 2024 where she states that she withdrew the TRO on the assurance of Brightview that they will not allow Javid to see Jamila. And the affidavit is so full of perjury that it would be discredited in discovery; one statement she made in that "miss-trial" was declared by Hon. Judge Wayne Humphrey which is totally false according to the Court transcript. The trial was passed on to Hon. Judge Arlene A. Gordon-Oliver, who on March 29, 2022 extended the TRO to October 19, 2022 and hinted that either of the two parties (Javaid or Neelofar), could face jail time; the Judge also questioned why this case was in Family Court and not in Guardian Court. She is sued for all claims including civil rights violations, fraud, elder abuse, IIED, abuse of process, malicious prosecution, civil conspiracy, and RICO violations.

4. **Neil H. Reig, Esq. (Defendant):** An attorney and notary in New York, alleged co-conspirator and legal advisor to Neelofar. Reig is believed to have drafted or facilitated the fraudulent 18-page POA and related documents (such as a health care proxy and trusteeship documents in Surrogate's Court, committing perjury that: a. It was an emergency; b. Family does not have $100,000 for IRS taxes; c. While Reig knew that family had cash more than a million in bank accounts;) to give Neelofar control over Jamila's affairs. He notarized documents that are suspected forgeries (e.g., notarizing Jamila's "signature" on the POA that Jamila likely never signed). Reig also represented or assisted Neelofar in court proceedings arising from this scheme (including appearing with Neelofar in Family Court on Feb. 25, 2020 to obtain a TRO against Javaid). Reig submitted an affidavit in Court on May 12, 2021 which contained statements that are perjury, like: "I was retained by Jamila in Summer of 2017", which is untrue. "I spoke with Jamila on the phone to inter alia discuss—", which never happened. There were about 100 pages to discuss on phone with an 80-year-old lady who is hard of hearing. Reig further said: "Within a week after I sent her the documents, — on July 18, 2017 Jamila executed the POA, HCP, Living Will and Last Will and Testament at my office." According to Jamila's written testimony, that never happened. On all these pages (100 or so or more) only two people appear — Neil Reig, Attorney, Neil Reig, witness, and the office employee Denise Gurdal as witness. And Reig gave this affidavit when Jamila was

trying to stop sale of her home in Court (Docket #54798/2021), by her own attorney, Khalid Azam. Since it was all a set up with the judges, they did not care for evidence. Reig is sued for fraud, civil conspiracy, RICO, and civil rights violations (as a willful participant under color of law in obtaining fraudulent court orders).

5. **Karen A. Morschhauser Bosshart, Esq. (Defendant):** Attorney of Neelofar Butt, knew that there were no three egregious acts of Javaid Aziz to warrant a TOP but stood in the Court of Hon. Judge Wayne Humphrey and committed perjury by saying under oath: "he (Javaid) grabbed her (Jamila) — —." Calling out Assault, a criminal offence. Karen did not have written sworn testimony of Jamila Butt to represent her in Family Court but represented her on February 25, 2020. Karen abused her professional oath as an officer of the Court. By knowingly filing in family court when she knew that the case did not belong to the family court and Hon Judge Wayne Humphrey, Neelofer Butt and Neil Reig were friends. Karen received Javaid Aziz's Pro Se reply to TOP but never filed a reply. Further details after discovery.

6. **Christopher L. Mangold, Esq. (Defendant):** An attorney who, since early 2020, has represented Neelofar in various matters. Mangold filed "hundreds of pages" of pleadings in multiple courts as part of the elder abuse racket. He purported to represent **Jamila** in court without Jamila's personal authorization (taking direction from Neelofar instead). Mangold knowingly filed false or harassing charges against Javaid (including criminal complaints) to intimidate him. He is sued as a co-conspirator aiding Neelofar's abuse of process and fraud (though not named in the RICO count, he is part of the overarching conspiracy).

7. **Brightview Senior Living, LLC (Defendant):** The operator of "Brightview Tarrytown," an assisted living facility in Tarrytown, NY where Jamila has been confined since late 2017. Brightview is a corporate defendant (believed to be organized under the laws of a state other than MA) that owns or manages the facility. Brightview staff, at Neelofar's direction, enforced Jamila's isolation – e.g., barring Javaid or other family from contact at Neelofar's instruction. Despite clear signs of Jamila's distress (she would cry and beg to see her brother) and Javaid's complaints, Brightview **failed to intervene** or report the abuse, effectively **abetting Neelofar's elder abuse and neglect** of Jamila. Brightview allowed an apparently unauthorized person (Neelofar) to dictate Jamila's care and visitation, even when Neelofar's legal authority was dubious. Brightview is sued for **elder abuse/neglect** (under applicable state law) and **intentional infliction of emotional distress** (for its reckless inaction despite knowing the harm to Jamila), as well as civil conspiracy (joining the agreement by acquiescing in the unlawful isolation). And injuries to Jamila (two broken arms).

8. **Steven C. Bromberg, CPA (Defendant):** An accountant for Jamila who was approached by Jamila's independent attorney (Khalid Azam) in early 2020 regarding Jamila's tax matters. Instead of cooperating to help Jamila, Bromberg allegedly joined Reig and Neelofar's efforts to withhold information and assist their scheme. He is sued as a co-conspirator (civil conspiracy count) for aiding in financial exploitation of Jamila (e.g., by failing to provide accounting and by facilitating the concealment of assets).

9. **Craig S. Donais, Esq. (Defendant):** An attorney who, on Neelofar's behalf, filed a lawsuit in **New Hampshire** in 2024 representing himself as counsel for Jamila. This suit was based on fraudulent documents from the New York proceedings and was filed without Jamila's consent or sworn testimony. (On information, this NH case was an

5

attempt to continue harassing Javaid in another forum; it ultimately was **defaulted** by the NH court, terminating in Javaid's favor.) Donais is sued for abuse of process and civil conspiracy.

10. **Thomas J. Rizzo, Esq. (Defendant):** An attorney who, on Neelofar's behalf, filed a lawsuit in **Massachusetts** in 2025 to enforce a tainted New York judgment against Javaid. Rizzo filed that Massachusetts action based on the fraudulent New York orders, without Jamila's independent involvement. This was done to harass and retaliate against Javaid in his home state. Rizzo is sued for abuse of process and as a co-conspirator.

11. **Dr. Jennifer Rosen (Defendant):** A neurologist in New York who, in early 2020, provided a **false "Physician's Letter"** opining that Jamila had dementia and lacked capacity. Dr. Rosen's letter did not follow proper protocols and omitted evidence of Jamila's lucidity. Neelofar and Reig used this "Rosen Letter" to mislead courts and justify isolating Jamila. Dr. Rosen is sued for fraud and as a participant in the conspiracy, as her knowingly flawed capacity evaluation was instrumental in depriving Jamila of her rights.

12. **Hannah Lea Emmett (Defendant):** An associate of Neelofar who assisted in handling Jamila's property and legal matters. On information and belief, Emmett helped Neelofar attempt to sell Jamila's home and may have acted as a "straw" agent in transactions. Emmett provided documents (such as Jamila's late husband Khalid Butt's will) to Reig to aid Neelofar. Emmett herself received $1,000,000 from Khalid Butt's life insurance, suggesting a financial motive. Emmett is sued as a co-conspirator who helped defraud and isolate Jamila for personal gain.

13. **Hon. Wayne A. Humphrey (Defendant):** A Judge of the Westchester County Family Court (NY). In February 2020, Judge Humphrey **presided over a Family Offense Petition** filed by Neelofar (purportedly on Jamila's behalf) against Javaid. On February 25, 2020, without hearing from Javaid, Judge Humphrey granted an **ex parte Temporary Order of Protection (TOP/TRO)** barring Javaid from any contact with Jamila. This order was obtained through Neelofar's false allegations of "harassment" or "abuse" which had no basis in fact. Judge Humphrey later **recused himself** in 2022 upon acknowledging he knew Neelofar personally (they had worked together at the DA's office) – a clear conflict. Plaintiffs allege Judge Humphrey's issuance of the TRO violated Javaid's and Jamila's due process and First Amendment/familial association rights, given the lack of notice or factual basis. **Relief sought against Judge Humphrey is solely equitable and declaratory** (no damages), to declare his orders void due to being procured by fraud and to enjoin their enforcement.

14. **Hon. Linda S. Jamieson (Defendant):** A Justice of the New York Supreme Court (Westchester County). Judge Jamieson presided over a 2021 civil action that Javaid filed to challenge Neelofar's conduct (including the validity of the POA and Jamila's isolation). On June 21, 2021, Judge Jamieson dismissed Javaid's case *without a hearing* and ruled that Javaid lacked standing to sue on Jamila's behalf. This dismissal, procured by Defendants' false representations, denied Javaid and Jamila any substantive review – amounting to a denial of due process. Judge Jamieson is named as a defendant to seek declaratory relief vacating or voiding her judgment (alleged to have been obtained by fraud/misrepresentation), and to address her role in the deprivation of Plaintiffs' rights. **No damages are sought against Judge Jamieson** (only equitable relief).

15. **Hon. William J. Giacomo (Defendant):** A Justice of the New York Supreme Court (Westchester County) who handled a subsequent phase of the litigation. In a Decision and Order dated December 22, 2021, Judge Giacomo dismissed Javaid's renewed claims, citing *res judicata* based on Judge Jamieson's prior dismissal. Judge Giacomo also issued an **injunction barring Javaid from filing further actions in New York regarding Jamila**. Plaintiffs contend this order was obtained through fraud on the court (Neelofar's perjury and concealment of material facts) and violated Javaid's constitutional rights (access to courts and association). Judge Giacomo is sued for **equitable relief only** – specifically, a declaration that his injunction and dismissal are void or unenforceable due to Defendants' underlying misconduct.
16. **John Doe & Jane Doe (To be added)**

## Jurisdiction and Venue

**Subject Matter Jurisdiction:** This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the U.S. Constitution and federal statutes, including 42 U.S.C. § 1983 (Civil Rights) and 18 U.S.C. § 1962 (RICO). The Complaint alleges a pattern of racketeering activity (mail and wire fraud, among other predicates) and violations of civil rights, which are federal causes of action. Additionally, the Court has diversity jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff Javaid Aziz and all Defendants, and the amount in controversy exceeds $75,000. Javaid is a citizen of Massachusetts; upon information, Defendants are citizens of New York (or, in Brightview's case, of states other than Massachusetts). (Jamila's interests are aligned with Javaid's; to the extent Jamila may be considered a New York citizen due to her residence, her inclusion is as an involuntary plaintiff under duress. In any event, federal question jurisdiction is independently satisfied.) The Court also has supplemental jurisdiction over the state law claims (elder abuse, fraud, etc.) under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

**Personal Jurisdiction:** All Defendants are subject to personal jurisdiction in Massachusetts under the Massachusetts long-arm statute, Mass. Gen. Laws c.223A § 3, and the Due Process Clause. Defendants purposefully directed tortious conduct toward Massachusetts, where Plaintiff Javaid resides and suffered harm. In particular, Neelofar Butt and her agents (including Reig and others) initiated legal actions and sent communications into Massachusetts with the aim to harass or impact Javaid. For example, Defendants served Javaid in Massachusetts with out-of-state court orders (such as the New York injunction) and even filed a Massachusetts court action against him in Cambridge, MA (Middlesex County) to enforce a dubious New York judgment. Javaid felt the brunt of the emotional distress and reputational harm in Massachusetts, and he had to expend resources in Massachusetts to defend against Defendants' actions. Additionally, **Brightview** conducts business that affects Massachusetts residents (Brightview accepted Jamila as a resident honoring an order barring a MA resident from contact, Brightview's conduct had effect on Javaid in MA). Furthermore, Defendants are engaged in an inter-state conspiracy with foreseeable effects in Massachusetts; under RICO's nationwide service of process provision and co-conspirator jurisdiction principles, they can be haled into this Court. In sum, Defendants have sufficient minimum contacts with Massachusetts, and exercising jurisdiction here comports with

traditional notions of fair play and substantial justice given Defendants' intentional targeting of a Massachusetts resident (Javaid).

**Venue:** Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Massachusetts. Javaid's injuries (severe emotional distress and financial expenditures) occurred at his home in Massachusetts, as Defendants' actions were deliberately aimed at causing harm to him here. Moreover, part of the unlawful conduct occurred in Massachusetts in 2025, when Neelofar (through Attorney Rizzo) filed a court action in Cambridge, MA to domesticate and enforce the fraudulently obtained New York judgment. That enforcement action is directly related to the claims in this case (as an act of retaliation and abuse of process) and occurred within this District. Venue is also proper under § 1391(b)(3) because all Defendants are subject to personal jurisdiction here. The case is appropriately assigned to the **Boston Division** of this District, as Javaid resides in Cambridge (Eastern Massachusetts) and the related Massachusetts state court action was in Middlesex County (within the Boston Division).

## Factual Background

The following facts are drawn from Plaintiffs' personal knowledge and the evidence available. They are organized chronologically and topically to explain how the situation evolved:

**A. Jamila's Intentions and Neelofar's Power Grab (2017–2020).** Jamila K. Butt is the matriarch of her family. After her husband (Dr. Khalid Butt) passed away in 2016, Jamila owned, either outright or via an irrevocable trust, the family home in Westchester County, New York, along with other assets. By 2019, as she was advancing in age, Jamila thoughtfully planned for her future. She clearly expressed that she wished to remain in her own home with appropriate in-home help for as long as possible, and **under no circumstances did she want her house sold during her lifetime**. She intended the home to eventually go to her children in her will, if she could no longer live there. Jamila **trusted her brother, Javaid,** to assist with her affairs consistent with her wishes. In fact, on **September 9, 2019**, Jamila hand-wrote and signed a directive letter stating *"Do not sell my house during my lifetime"*, among other instructions. Shortly thereafter, in late 2019, Jamila also **hired an attorney, Khalid M. Azam, Esq.,** to represent her interests. She signed a retainer agreement with Mr. Azam in October 2019 to help counter any unwanted interference by her daughter (Defendant Neelofar). This shows that Jamila was **proactive and of sound mind** – she sought independent legal advice to ensure her wishes (especially about her home) were honored.

Despite Jamila's clear intent, Defendant **Neelofar Butt** – Jamila's adult daughter – had other plans. Neelofar coveted control over Jamila's assets (particularly the valuable Westchester home) and wanted to dictate Jamila's care. Starting in late 2019, Neelofar began positioning herself to take over. **Without Jamila's true consent,** Neelofar (with help from attorney Reig) prepared an unusually lengthy **18-page Power of Attorney document revealed in 2019 (prepared in 2017)** that purported to name Neelofar as Jamila's attorney-in-fact. Jamila's genuine signature was likely forged or obtained under false pretenses, as the document's length and provisions were not standard, and Jamila never mentioned it to Javaid. Notably, the POA was **notarized by Defendant Neil H. Reig** (and witnessed by his assistant) – raising conflict-of-interest concerns

since Reig notarized a document that he himself drafted for his friend Neelofar. This **contested POA** is central to Neelofar's takeover. In contrast, on **February 12, 2020**, Jamila executed a **different Power of Attorney in favor of Javaid Aziz** (her brother). This happened on the very day of an incident described below, indicating Jamila's true desire was to authorize Javaid to help her. The February 12, 2020 POA to Javaid (a short form, only a few pages) is powerful evidence that Jamila **trusted Javaid, not Neelofar, with her affairs**. (Even if multiple POAs created legal confusion, the existence of Jamila's letter and POA favoring Javaid underscores that Neelofar's later actions were against Jamila's will.)

**B. False Accusations and a Fraudulent TRO to Isolate Jamila (2020–2022).** In early 2020, tensions came to a head. By February 2020, Neelofar was aware that Jamila wanted to go back home, and that Jamila had enlisted Javaid's help (and even made Javaid her attorney-in-fact on Feb. 12, 2020). To **neutralize Javaid's involvement**, Neelofar resorted to a preemptive legal strike. On or about **February 25, 2020**, Neelofar filed a **Family Offense Petition** in Westchester County Family Court against Javaid. This filing was ostensibly made on Jamila's behalf (with Neelofar claiming to act for her mother) and on Neelofar's own behalf. In it, Neelofar made a series of **outrageous false allegations**, including that Javaid had "kidnapped" Jamila, that he was harassing or abusing Jamila, and that Jamila was **in immediate danger from Javaid**. In reality, **no such abuse or harassment ever occurred** – Javaid's only "interference" was attempting to protect Jamila from Neelofar's unilateral actions. Neelofar's petition omitted that **earlier that month Jamila had sided with Javaid** (via the POA) and that Jamila was resisting Neelofar's pressure to sell her house.

Defendant **Judge Wayne Humphrey** of the Family Court heard Neelofar's petition *ex parte* on February 25, 2020. Without giving Javaid any notice or opportunity to be heard, Judge Humphrey issued a **Temporary Order of Protection (TRO)** that same day barring Javaid from any contact with Jamila. This order treated Javaid as though he were a domestic violence threat, despite **no history of any abuse** between Javaid and Jamila (they are siblings who had lived separately and had a loving relationship). The issuance of this TRO was highly irregular and procedurally deficient: Javaid was not present or heard, and Jamila herself did not testify or submit any sworn statement in support (indeed, **Jamila's own wishes were contrary to the order**, as she wanted to see her brother). Nevertheless, with the TRO in hand, **Neelofar gained immediate power** – she now had a court order to justify keeping Javaid away. Over the next months, Neelofar ensured the TRO was **extended repeatedly**, keeping Javaid barred through 2020 and into 2021. During this time, **Jamila was heartbroken and confused**: she suddenly stopped hearing from her brother and was **told (falsely) by Neelofar** that Javaid "didn't want to see her" or otherwise misled about why Javaid vanished. In truth, Javaid was legally restrained and threatened with arrest if he attempted contact. Jamila would cry and ask staff or anyone who would listen that she wanted to talk to Javaid. The **family court process was perverted into a weapon** to punish Javaid and isolate Jamila.

It later emerged that Judge Humphrey should likely have **never handled** Neelofar's petition due to a personal conflict: Neelofar and Reig were **personal friends of Judge Humphrey** (all had worked in or around the local District Attorney's office previously). Judge Humphrey did not disclose this conflict at the time. Only in **November 2021** did Judge Humphrey recuse himself, remarking on the record that he belatedly realized he knew Neelofar (claiming he hadn't

recognized her earlier). Kept handing the TRO till March 29, 2022. By then, the damage was done: Jamila and Javaid had been kept apart for two years under the shadow of Humphrey's orders.

**C. Isolation and Mistreatment of Jamila (2017–Present).** Armed with the fraudulent POA (naming herself, and later the family court TRO against Javaid), **Neelofar moved Jamila into an assisted living facility** (Defendant Brightview Senior Living in Tarrytown, NY) in late 2017. From that point on, Jamila has been effectively a **prisoner in the facility**. Neelofar instructed Brightview staff that **no one was allowed to contact Jamila except herself**. Brightview complied: they prevented Jamila from making or receiving phone calls to Javaid, and **eventually even took away Jamila's cell phones** altogether. Jamila was **socially isolated**, a recognized form of psychological elder abuse. When Javaid attempted to check on his sister, he was rebuffed by Brightview, which cited the TRO or claimed "family issues are being handled by the courts". Even *law enforcement* who tried to do wellness checks were misled by Brightview staff—police were told Jamila was fine and that Neelofar had authority, so they did not interview Jamila in depth. In truth, Jamila was **suffering**: she became depressed and confused, not understanding why her beloved brother had seemingly disappeared. Javaid, for his part, was **anguished and anxious**, imagining his sister suffering alone. Both experienced serious emotional distress: Jamila felt despair and abandonment, and Javaid experienced insomnia, depression, and constant worry. This extreme emotional pain was precisely what Neelofar intended (or was recklessly indifferent to) – **it was not accidental**. By isolating Jamila, Neelofar could break the sibling bond and make Jamila entirely dependent on *her*, easing the path to control Jamila's assets.

During Jamila's confinement at Brightview, there were also instances of possible **medical abuse or neglect**. On one occasion, Jamila managed to surreptitiously communicate to Javaid that "*they are giving me a new pill that is affecting me*". Jamila felt disoriented by a medication change, raising concerns that Neelofar (or Brightview staff at Neelofar's behest) may have been administering sedatives or other drugs to keep Jamila compliant – a form of chemical restraint. Javaid was so alarmed by this report that he called the local police in Tarrytown to do a wellness check. However, as noted, even law enforcement inquiries were stonewalled with reassurances that Jamila was "fine" and that "family issues" were in court. No independent investigation was done at the time. **Brightview's inaction**, despite clear signs of abuse (a resident crying to see family, a brother raising alarms), made it complicit in Jamila's ongoing mistreatment. Jamila's health has deteriorated in isolation. Reports indicate she has become more withdrawn and depressed, and at times confused – consistent with **"institutionalization syndrome"** or possibly effects of over-medication. In late 2024, in a brief covert phone call that a friend facilitated, Jamila whispered to Javaid, *"Please take me home with you,"* showing her continued desire to escape Neelofar's control. This plea haunts Javaid and underscores the **urgency** of intervention.

**D. Theft and Financial Exploitation of Jamila's Assets.** With Javaid sidelined and Jamila under her thumb, **Neelofar systematically stripped Jamila of her property**. Central to this was the **fraudulent POA revealed in 2020** naming Neelofar. Using that document, Neelofar took control of Jamila's bank accounts, investments, and mail. In mid-2020, Neelofar (working with attorney Reig) went so far as to **sell Jamila's Westchester house** – the very home Jamila explicitly said not to sell. They did this behind Jamila's back while Jamila was in the facility.

10

The house was sold around 2020–21, and the proceeds (approximately $1 million or more) were deposited into accounts controlled by Neelofar (under the POA authority). **Jamila did not receive or direct any of those funds**; to this day, no accounting has been provided of what Neelofar did with the money. Upon learning of the secret sale, Jamila was devastated – her home was her pride, and losing it against her will caused her immense grief. This loss is irreparable, as real property with decades of sentimental value cannot be replaced. It also meant Jamila's chance to ever return home was eliminated. (All of Jamila's personal legal papers and possessions in the house were also lost or taken by Neelofar during the sale.) Neelofar's actions blatantly violated Jamila's trust and **fiduciary duty** (if any) by acting contrary to Jamila's explicit instructions.

Javaid, upon discovering Neelofar's financial maneuvers, attempted to alert authorities. In early 2021, he filed elder abuse reports with the police and even contacted the Westchester County District Attorney's Office, providing evidence that the POA was likely forged and that Jamila's assets were being misappropriated. However, **no effective action was taken**. Due to Neelofar's and Reig's connections (both had worked in the DA's orbit), Javaid's complaints were ignored or downplayed. One police officer eventually told Javaid that **Neelofar had "barred" them from discussing Jamila's case with him** – a puzzling statement indicating deference to Neelofar's claimed authority. Meanwhile, **Jamila's savings and income** (social security, pension, etc.) were also taken over by Neelofar. Those funds were used to pay Brightview's fees (keeping Jamila in a place she never wanted to be), and any surplus was possibly siphoned by Neelofar. In short, Jamila's entire **estate was effectively under Neelofar's control**, and Neelofar acted as though Jamila's assets were her own to spend.

**E. Misuse of Courts and Litigation History (2021–2025).** Javaid did not passively accept these events. Despite the TRO gagging him in 2020, he sought legal avenues to **free his sister and hold Neelofar accountable**. In 2021, Javaid (through counsel) filed a civil action in New York Supreme Court (Westchester County) against Neelofar. He asked the court to invalidate the fraudulent POA, stop the isolation, and declare Neelofar's actions unlawful. This case (Index # 64749/2021) was initially before **Judge Linda S. Jamieson**. Unfortunately, Judge Jamieson, on **June 21, 2021, dismissed Javaid's case without a hearing**, accepting Defendants' arguments that Javaid lacked standing to sue on Jamila's behalf. Judge Jamieson's decision relied on misrepresentations: for example, Neelofar and Reig had falsely painted Javaid as having no role or that Jamila was content under Neelofar's care. The dismissal meant that none of the evidence of fraud or abuse was substantively considered. Javaid appealed that decision. While the appeal was pending, Javaid also filed a **new action or motion** in late 2021 (perhaps to intervene or to vacate the TRO and get access to Jamila, after Judge Humphrey recused). That matter came before **Judge William J. Giacomo**. On **December 22, 2021**, Judge Giacomo issued a **Decision and Order** that not only dismissed Javaid's claims (essentially citing *res judicata* from Judge Jamieson's earlier dismissal) but also imposed an **injunction barring Javaid from filing any new actions in New York courts regarding these issues**. Judge Giacomo's order also hit Javaid with a money judgment for Neelofar's legal fees (approximately $21,586). This was a crushing result for Javaid: not only were his efforts to obtain justice for Jamila rebuffed, but he was now **prohibited from even filing further cases in New York** and faced a financial penalty. The New York litigation thus ended in a way that **Neelofar touted as a victory** – but Javaid maintains those judgments were the product of **fraud on the court** (Neelofar's perjury, Dr. Rosen's false letter, etc.) and procedural abuses that violated his rights. (Notably, during a March 2022

11

proceeding after Judge Humphrey's recusal, **Neelofar admitted on the record that she did *not* actually have legal guardianship of Jamila**. This admission vindicated Javaid's position that Neelofar's authority was self-assumed and not court-granted. Yet even after that, no court restored Javaid's access to Jamila or voided the prior orders.)

Javaid filed for relief to file motion to visit his sister in New York Court and Neelofar (perhaps forum shopping) filed a civil lawsuit against Javaid in Grafton County, Superior Court (NH) (Docket 215-2024-CV-00010). She again purported to act on Jamila's behalf. The suit was likely another harassment tactic, possibly alleging that Javaid's communications or efforts constituted something actionable. Javaid retained NH counsel and considered counterclaims. However, that case **never proceeded to a judgment on the merits** – Neelofar ultimately **failed to prosecute it, leading to a default against her**. In November 2024, the NH court **defaulted Neelofar's case**, effectively dismissing it in Javaid's favor. (An official Notice of Default dated around Nov. 25, 2024 can be provided as evidence.) In correspondence, Javaid's own NH attorney acknowledged that any counterclaims Javaid had (e.g., for the torts now in this federal suit) were outside the NH court's jurisdiction and would need to be brought elsewhere. This further demonstrates that **Javaid has not had a day in court on these grievances** – he was actually advised to bring them in a different forum, which is precisely why he is filing in Massachusetts now.

Most recently, in early **2025**, Neelofar turned to the Massachusetts courts to continue the pressure on Javaid. Through Defendant Rizzo (a Massachusetts attorney), Neelofar filed an action in the Cambridge District Court (a Massachusetts state court) to **enforce the New York money judgment (~$21k)** against Javaid. This was essentially a debt collection or judgment domestication action, but it is noteworthy because it shows Neelofar **reached into Massachusetts** to inflict financial harm on Javaid. This Massachusetts action is part of the pattern of retaliation: every time Javaid tries a legal avenue, Neelofar responds by escalating in another court (in this case, using Massachusetts to enforce a highly contested judgment). That proceeding is now **related** to the claims here, and Javaid will seek to consolidate or have it addressed along with this case (since the underlying NY judgment is alleged to be void due to fraud).

In summary, by the time of this filing (May 2025), **Jamila remains isolated under Neelofar's control** at Brightview; **Javaid remains barred from contact** due to the lingering effect of the 2020 TRO (which, while expired, effectively continues via Jamila's isolation and threat of new TROs if he approaches). Neelofar continues to hold Jamila incommunicado and control her assets, and any attempt by Javaid to seek relief has been met with swift litigation maneuvers to shut him down. **Plaintiffs have exhausted reasonable alternatives**: they reported to authorities, they fought in NY courts (only to be turned away on technical grounds), and they even tried other state courts. Thus, they now turn to this Court for comprehensive relief.

## Causes of Action

*(Each count below incorporates by reference the allegations above, and all counts are asserted by **Javaid Aziz individually** and, where applicable, on behalf of **Jamila K. Butt** as her attorney-in-fact/next friend.)*

**Count I – Violation of Civil Rights (42 U.S.C. § 1983: Denial of Due Process & First Amendment Associational Rights) – Against Defendants Neelofar Butt, Neil H. Reig, Hon. Wayne A. Humphrey, Hon. Linda S. Jamieson, and Hon. William J. Giacomo.**
**Basis:** Defendants, acting under color of state law in concert, deprived Plaintiffs of rights guaranteed by the U.S. Constitution. **Neelofar and Reig** misused judicial processes (Family Court and Supreme Court) by presenting false evidence and thereby entangled state judges in their scheme. This resulted in court orders (the February 2020 no-contact TRO, the June 2021 dismissal, and December 2021 injunction) that violated Plaintiffs' due process rights and Javaid's First Amendment right of intimate association with his sister. Specifically, Javaid was deprived of notice and a fair opportunity to be heard before being barred from contact with Jamila (procedural due process violation), and both Javaid and Jamila were deprived of their liberty interest in maintaining their sibling relationship (a right protected by substantive due process and the First Amendment). **Judge Humphrey, Judge Jamieson, and Judge Giacomo** are named in this count to the extent they issued or enabled these unconstitutional orders. While judges generally have immunity, Plaintiffs seek **declaratory relief**: a declaration that the orders in question (the Family Court TRO and the NY Supreme Court dismissal & injunction) are null and void due to the fraud and constitutional violations underpinning them. No monetary damages are sought against the judges, only against **Neelofar and Reig**, who conspired to cause the constitutional deprivations. Neelofar and Reig are **liable under §1983** because they willfully participated with state actors (the judges) to deprive Plaintiffs of rights, or alternatively, because they acted under color of law by effectively controlling Jamila under a pretense of lawful authority (e.g., Neelofar falsely holding herself out as a lawful guardian). As a result of this violation, Plaintiffs suffered injury, including the loss of family companionship and severe emotional distress.

**Count II – Abuse of Process – Against Defendants Neelofar Butt and Neil H. Reig.**
**Basis:** Neelofar and Reig misused legal process for an ulterior purpose other than what the process was intended for. They initiated and prosecuted legal actions not to resolve genuine disputes, but **to intimidate, harass, and gain leverage** in furtherance of their scheme to control Jamila and silence Javaid. Examples include: (a) the **Family Court petition in Feb 2020**, where Neelofar obtained a TRO under false pretenses, not to protect Jamila from real harm, but to *isolate* Jamila and sideline Javaid; (b) the **Massachusetts enforcement action in 2025**, filed not merely to collect a debt, but to retaliate against Javaid for continuing to seek relief; (c) any other court filings (New Hampshire suit, etc.) made to multiply proceedings and burden Javaid. In each instance, Defendants **used the judicial process as a weapon**, achieving orders (process) that they then used to further their private aims (keeping Jamila isolated, draining Javaid's resources, etc.). The **ulterior motive** was evident: e.g., Neelofar sought the TRO to cut off Javaid on the very day Jamila empowered him via POA, and sought the MA action right after Javaid signaled intent to sue. This abuse of process caused Plaintiffs damage (legal fees, emotional distress, and continuation of Jamila's confinement).

13

**Count III – Malicious Prosecution (and Malicious Use of Civil Proceedings) – Against Defendant Neelofar Butt.**
**Basis:** Neelofar initiated multiple baseless legal proceedings against Javaid (some styled as civil, one effectively quasi-criminal with the TRO) with malice and without probable cause, and those proceedings terminated in Javaid's favor (or in a manner not resulting in a conviction or sustained adverse finding against him). Specifically, Neelofar's **Family Court TRO proceeding** was based on false allegations; once Judge Humphrey recused and the truth emerged (that Neelofar had no guardianship), the family offense petition was not continued and ended without any finding that Javaid did wrong. Neelofar's **New Hampshire lawsuit (2024)** was terminated by default *against her*, which constitutes a favorable termination for Javaid. Any **criminal complaint** Neelofar filed (it's noted she attempted to file criminal charges via Mangold) were not pursued or were dismissed. Neelofar acted with **malice** – her primary intent was to harm Javaid (and by extension Jamila) by misusing legal processes, not to vindicate any genuine right. As a result of these malicious proceedings, Javaid suffered damages including attorney fees, emotional distress, and reputational harm. (This count may overlap with Abuse of Process but is pleaded in the alternative for any jurisdictions recognizing the distinct tort of malicious prosecution.)

**Count IV – Fraud (and Fraud on the Court) – Against Defendants Neelofar Butt and Neil H. Reig.**
**Basis:** Neelofar and Reig engaged in intentional misrepresentations and deceit to further their scheme. This includes **forgery and fraudulent execution of documents** (the 18-page POA revealed in 2020, a Health Care Proxy, possibly court submissions with Jamila's falsified signature), and **false statements to courts** (perjury in affidavits and testimony). For example, Neelofar falsely represented to courts that Jamila was incompetent and that Neelofar had proper authority, which were lies made to gain court orders. Reig facilitated this fraud by drafting false documents and by **notarizing a signature that was not truly Jamila's**. They also concealed material facts (such as Jamila's letters and wishes, and Neelofar's conflict with Judge Humphrey). These misrepresentations were made intentionally, with knowledge of falsity, and with the intent that others (courts, police, Brightview staff, family members) rely on them. The victims (courts and parties) justifiably relied on these lies: e.g., Judge Humphrey relied on Neelofar's sworn allegations of abuse to issue the TRO; Brightview relied on Neelofar's claimed POA authority to deny Javaid access. As a direct result, Plaintiffs suffered harm: Jamila lost property and liberty, and Javaid lost his relationship and incurred costs. Additionally, the fraud on the court aspect seeks relief to **void any court orders obtained by fraud** (as courts have inherent power to set aside judgments procured by fraud). This count may be accompanied by a request for punitive damages, given the egregious, willful nature of the fraud.

**Count V – Intentional Infliction of Emotional Distress (IIED) – Against Defendants Neelofar Butt and Brightview Senior Living, LLC.**
**Basis:** Defendants engaged in extreme and outrageous conduct with the intent (or reckless disregard) to cause severe emotional distress to Plaintiffs. **Neelofar's conduct** – isolating an elderly mother from her devoted brother, lying to each of them, selling Jamila's home, and dragging Javaid through baseless litigations – is beyond all bounds of decency in a civilized society. It was calculated to emotionally break Jamila and punish Javaid. **Brightview's conduct** – consciously assisting or allowing the isolation and emotional neglect of Jamila for years – is

also outrageous, given its duty as a caregiving facility. Brightview staff literally stood between an elderly woman and her concerned brother, enforcing a dubious no-contact directive even as Jamila wept and begged for family. Such callous indifference to a resident's emotional well-being is egregious. The emotional distress suffered by Plaintiffs was severe: Jamila's mental health deteriorated (depression, despair) and Javaid suffered severe anxiety, grief, and insomnia. Defendants' actions were a substantial factor in causing this distress. Therefore, they are liable for IIED.

**Count VI – Civil Conspiracy – Against All Defendants.**
**Basis:** Defendants entered into an agreement (explicit or tacit) to commit the unlawful acts described above (fraud, abuse of process, elder abuse, etc.) or to accomplish lawful acts by unlawful means, and each committed overt acts in furtherance of the conspiracy. Starting in 2017, Neelofar enlisted Reig to craft false documents; they brought in Dr. Rosen to bolster the false incapacity narrative; Neelofar involved Mangold, Donais, and Rizzo to file harassing lawsuits in various states; Brightview cooperated by isolating Jamila; Emmett helped with property transfers; Bromberg withheld financial info – all these acts show a **coordinated effort**. The co-conspirators communicated across state lines (emails, calls, court filings) with a common goal: **keep Jamila under Neelofar's control and fend off Javaid's interventions**. Each Defendant knew or should have known of the overall plan and their role in it. As a result of the conspiracy, Plaintiffs suffered the injuries detailed herein. Under conspiracy liability, each Defendant is jointly and severally liable for the torts committed within the scope of the conspiracy (e.g., even those who didn't themselves file the TRO are liable for that abuse of process if it was a foreseeable part of the conspiracy).

**Count VII – Elder Abuse and Exploitation – Against Defendants Neelofar Butt and Brightview Senior Living, LLC.**
**Basis:** Neelofar and Brightview violated laws and duties designed to protect elder adults from abuse, neglect, and exploitation. Neelofar's actions constitute **financial exploitation** (misusing Jamila's funds, property, and identity for personal gain) and **psychological/physical abuse** (willfully isolating Jamila, potentially over-medicating her, and inflicting emotional harm). Brightview is liable for **neglect and enabling abuse**: as Jamila's care facility, Brightview had a duty (including under New York Social Services Law §473 or similar statutes) to report suspected abuse and to uphold Jamila's rights as a resident. Instead, Brightview actively or negligently contributed to abuse by obeying Neelofar's improper directives to isolate Jamila, by failing to seek Jamila's consent or involvement in her own care decisions, and by ignoring signs of harm (crying, complaints, a family member's urgent pleas). This count may invoke Massachusetts law to the extent Jamila has connections here (or simply proceed as a common-law tort claim for elder abuse, recognized in some jurisdictions via negligence per se or statutory tort). As a proximate result of Defendants' elder abuse, Jamila suffered injuries including loss of liberty, emotional trauma, deterioration of health, and loss of property. Javaid also suffered derivative emotional distress seeing his sister's plight. Plaintiffs seek compensatory damages, and if applicable, statutory treble damages or civil penalties under any elder protection statutes, as well as injunctive relief to prevent further abuse.

**Count VIII – Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) & (d) – Against Defendants Neelofar Butt and Neil H. Reig.**

**Basis:** Neelofar and Reig, along with others, formed an **association-in-fact enterprise** engaged in interstate racketeering activity to wrongfully take control of Jamila's assets and deprive her of her rights. The enterprise consists of the network of individuals (Neelofar, Reig, and co-conspirators) and entities (Brightview) who acted in concert. **Pattern of Racketeering:** Over at least 5 years (2019–2025), Defendants committed multiple predicate acts of **mail fraud and wire fraud** (18 U.S.C. §§ 1341, 1343) by transmitting false documents and communications through mail and electronic means in furtherance of the scheme. Examples: mailing or emailing the forged POA and related legal filings across state lines; mailing false court pleadings (e.g., the family offense petition, the New York complaint, the Massachusetts enforcement filing) containing misrepresentations; wiring proceeds of the home sale or other assets. They also committed **financial institution fraud** by possibly misrepresenting authority to banks to transfer Jamila's funds, and **identity theft** by using Jamila's identity in legal documents without consent (potentially violating 18 U.S.C. § 1028). The predicate acts were related and continuous – all aimed at the common purpose of exploiting Jamila and silencing Javaid, and occurring over multiple years. **Neelofar and Reig conducted the enterprise's affairs** through this pattern of racketeering: Reig provided the legal/notary tools, Neelofar orchestrated and gave direction. **Conspiracy (18 U.S.C. § 1962(d)):** They agreed with each other and others to commit this pattern; each took actions to further the conspiracy. As a result of the RICO violations, Plaintiffs suffered injury to their business or property: Jamila's property (house and funds) was taken, and Javaid's expected inheritance or financial support to his sister was disrupted; Javaid also spent money on legal fees as a direct result of Defendants' fraudulent court filings. Under RICO, Plaintiffs are entitled to recover treble damages and attorney's fees. Additionally, Plaintiffs seek equitable relief under RICO, including possibly **injunctive relief** to prevent further racketeering activity (e.g., prohibiting Defendants from using any powers of attorney or court orders obtained through fraud).

## Prayer for Relief

**WHEREFORE,** Plaintiffs Javaid Aziz (individually and as attorney-in-fact for Jamila K. Butt) respectfully request that this Court enter judgment in their favor and grant the following relief:

1. **Declaratory Relief:** A declaration that the February 25, 2020 Family Court Temporary Order of Protection and related orders, and the New York Supreme Court orders of June 21, 2021 and December 22, 2021 (including the filing injunction against Javaid), were obtained by fraud and in violation of Plaintiffs' rights, and are therefore void or unenforceable.
2. **Injunctive Relief:** Permanent injunctions prohibiting Defendants from continuing to isolate or mistreat Jamila. This includes enjoining Neelofar (and all persons in concert with her) from barring communication between Jamila and Javaid, from interfering with Jamila's living arrangements to Jamila's detriment, and from accessing or disposing of Jamila's assets without court supervision. Additionally, an injunction removing Neelofar from any position of authority over Jamila (such as power of attorney or de facto guardian) and preventing any further abuse of process in any jurisdiction.
3. **Immediate Injunctive Relief (TRO/Preliminary Injunction):** As detailed in the accompanying motion, Plaintiffs seek an immediate Temporary Restraining Order and

subsequent preliminary injunction to ensure Jamila's safety and contact with Javaid during the pendency of this case.

4. **Compensatory Damages:** An award of compensatory damages in an amount to be determined at trial, but well in excess of $75,000, for the losses caused by Defendants. This includes damages for Jamila's financial loss (e.g., the value of the home/nearly $1 million, and any misappropriated funds), expenses incurred, and emotional pain and suffering of both Jamila and Javaid.
5. **Punitive Damages:** An award of punitive/exemplary damages against the individual Defendants (especially Neelofar and Reig, and other non-immune co-conspirators) to punish their willful, malicious conduct and to deter such egregious elder abuse and fraud in the future.
6. **RICO Treble Damages and Fees:** Treble damages as provided by 18 U.S.C. § 1964(c) for the RICO claim, along with an award of costs and reasonable attorney's fees (to the extent Javaid hired attorneys or for the value of his time pro se).
7. **Appointment of Guardian ad Litem:** An order appointing a suitable **Guardian ad Litem for Jamila K. Butt** to protect her interests in this litigation (as separately moved below), ensuring Jamila's voice and best interests are represented independently of the parties.
8. **Restoration of Jamila's Rights:** Any equitable relief necessary to restore Jamila's personal autonomy and estate. This may include orders voiding any fraudulent power of attorney or related legal instrument, and ordering an accounting and restitution of Jamila's assets taken by Defendants.
9. **Costs and Interest:** An award of taxable costs, and pre- and post-judgment interest as allowed by law.
10. **Any other relief** the Court deems just and proper, including but not limited to referral of any matters to appropriate law enforcement or regulatory agencies (given the serious nature of the allegations).

Plaintiffs demand a **trial by jury** on all issues so triable.

Date: May 27th, 2025.
Respectfully submitted,

*Plaintiff Javaid Aziz* (Pro Se)
on his own behalf and as Attorney-in-Fact for Jamila K. Butt
131 Reed Street, Cambridge, MA 02140
Tel: 617 642 9058   – Email: javaid.aziz@gmail.com

*[signature: Javaid Aziz]*

_____

Javaid Aziz

**Verification by Plaintiff Javaid Aziz:**

I, Javaid Aziz, declare under penalty of perjury that I am a Plaintiff in the above action. I have read the foregoing Verified Complaint and know the contents thereof. The factual allegations are true to my personal knowledge or, as to matters based on information and belief, I believe them to be true. This verification is made by me for myself and on behalf of co-Plaintiff Jamila K. Butt (my sister) as her attorney-in-fact and next friend, given her inability to access counsel while under duress.

Date: May 27th,, 2025.

*Javaid Aziz.*

_____

Javaid Aziz